IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANNIE B. HUDSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0026-WS-N |
| | ) |
| UNIVERSITY OF ALABAMA | ) |
| HEALTHCARE SYSTEMS, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss in part or, in the alternative, motion for more definite statement. (Doc. 18). The parties have filed briefs in support of their respective positions, (Docs. 18, 26, 27), and the motions are ripe for resolution. After careful consideration, the Court concludes that the motion to dismiss is due to be granted in part and denied in part and that the motion for more definite statement is due to be denied.

## BACKGROUND

According to the amended complaint, (Doc. 17), the plaintiff, an African-American, was employed by the defendant as a billing and insurance clerk. The amended complaint addresses events occurring between July and December 2014. In July, the plaintiff's workload was doubled when a temporary employee was fired and not replaced. The day after she was informed of her increased workload, the plaintiff received a reprimand for insubordination on three grounds: slamming copies onto a desk, not looking supervisors in the eye, and not appearing to be busy when they passed by. At the same time, the plaintiff received an evaluation that was lowered due to the asserted insubordination, even though the evaluation period had closed over six weeks earlier. A week later, the plaintiff was asked to

create a list of her job duties so as to justify her position in the face of impending job cuts.

The plaintiff's time (arrival, departure and breaks) was far more scrutinized than that of any white employee in her department.  In September, she was questioned about a missing package, with her supervisors attempting for several days to force her to admit responsibility.   Shortly thereafter, the plaintiff filed an internal EEO complaint, which became public knowledge within the department, with supervisors permitting white employees to openly discuss the complaint and laugh.  In October, the plaintiff was berated by a physician for being stupid, even though she was handling both check-in and check-out by herself.  The physician also said that the department director would get her fired.  In early November, the plaintiff was reprimanded for returning late from a benefits fair, even though no time limit had been given.  A few days later, the EEO manager advised the plaintiff that her supervisor was alleging that the plaintiff was creating a hostile work environment.  Around this time, the plaintiff sought medical attention to address health issues arising from stress at work.  On December 11, 2014, the plaintiff was terminated, with the stated reason being her late return from the benefits fair.

The amended complaint asserts three causes of action, all under Title VII: (1) race discrimination; (2) hostile work environment; and (3) retaliation.

The defendant argues that the amended complaint, other than with respect to termination, fails to state a claim on which relief can be granted.  With respect to the race discrimination claim, the defendant argues that the amended complaint fails to allege an adverse employment action. (Doc. 18 at 2-6).  With respect to the retaliation claim, the defendant argues that the amended complaint fails to allege an adverse action meeting the standard articulated in *Burlington Northern and Santa Fe Railway v. White*, 548 U.S. 53 (2006).  (Doc. 18 at 7-9).  With respect to the hostile work environment claim, the defendant argues that the amended complaint fails to set forth facts plausibly alleging that the alleged

harassment was sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment. (*Id.* at 9-11). Should its motion to dismiss fail, the defendant argues the plaintiff should be required under Rule 12(e) to file a second amended complaint that, for each count, specifically identifies the precise preceding paragraphs relevant to that count. (*Id.* at 12-13).

## DISCUSSION

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court employs the same principle on motion to dismiss. *E.g., Jurich v. Compass Marine, Inc.*, 906 F. Supp. 2d 1225, 1228 (S.D. Ala. 2012). Accordingly, the Court will consider only those arguments the parties have expressly advanced and will not supply legal or analytical support the parties have declined to offer themselves.

**I. Motion to Dismiss.**

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a

3

recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

These are the pleading requirements of Rule 8(a)(2), and failure to meet them exposes a complaint to dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted. But the complaint is so exposed only if the defendant moves for dismissal under that rule, invokes the plausibility standard, and makes a satisfactory showing that, in certain, specified respects, for certain, specified reasons, the complaint falls short of that standard.[1] "Vague, generalized

---

[1] This necessarily follows from the principle that the movant bears the burden of showing that dismissal for failure to state a claim is warranted. *E.g., Beck v. Deloitte &*

assertions that a claim is somehow implausible, without a clear, supported explanation of just what is implausible and why, places no burden on the Court to supply the deficiency or on the plaintiff to respond." *FNB Bank v. Park National Corp.*, 2013 WL 1748796 at *2 (S.D. Ala. 2013).

### A. Race Discrimination.

"[A]dverse employment action is an indispensable element of a Title VII plaintiff's case …." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1246 (11th Cir. 2001). Therefore, to survive a motion to dismiss under Rule 12(b)(6), the amended complaint must contain allegations reflecting the existence of one or more adverse employment actions. The defendant denies that the amended complaint does so.

An adverse employment action "must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Davis*, 245 F.3d at 1239 (quoting 42 U.S.C. § 2000e-2(a)). Thus, "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id*. (emphasis in original). "[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*.

Other than termination, the adverse actions identified by the plaintiff in the amended complaint are as follows: (1) carrying a double workload; (2) having her time scrutinized more than that of white employees; (3) receiving a reprimand for insubordination; (4) receiving an evaluation that was lowered due to insubordination; (5) being asked to create a list of her job duties; (6) being questioned about a missing package; (7) having her internal EEO complaint made known and laughed at; (8) being berated by a physician; (9) being reprimanded for

---

*Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998); *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1314 n.26 (S.D. Ala. 2012).

returning late from a benefits fair; and (10) being accused of creating a hostile work environment.

### 1. Workload.

The defendant relies on an unpublished Fifth Circuit opinion for the proposition that "[i]mposing a higher workload than that given to other employees is not an adverse employment action under title VII." *Ellis v. Compass Group USA, Inc.*, 426 Fed. Appx. 292, 296 (5th Cir. 2011). In the Fifth Circuit, however, "[a]dverse employment actions include only ultimate employment actions, such as hiring, firing, promoting, compensating, or granting leave." *Id*. At least after *Davis*, the standard in the Eleventh Circuit extends beyond ultimate employment actions to any other action working a serious and material change in the plaintiff's terms and conditions of employment. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

The defendant equates a "workload" claim with a "work assignment claim." This may be correct, although it appears the latter term generally is employed when a plaintiff complains of being given menial, distasteful or otherwise unsatisfactory tasks rather than when she is given more work than her peers. In any event, the plaintiff's own authority states only that work assignment claims, "absent unusual circumstances, typically do not constitute adverse employment actions." *McCone v. Pitney Bowes, Inc.*, 582 Fed. Appx. 798, 800 (11th Cir. 2014); *accord Davis*, 245 F.3d at 1244 ("We do not suggest that a change in work assignments can never by itself give rise to a Title VII claim; in unusual instances the change may be so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment."). The defendant has not attempted to show that being required to do the work of two is not an unusual circumstance sufficient to render the plaintiff's workload/work assignment an adverse employment action.

### 2. Scrutiny and questioning.

"This court and others within this circuit have uniformly held that heightened scrutiny, without evidence that any disciplinary action was taken against [the plaintiff] or that he was subjected to any tangible consequence, does not constitute an adverse employment action." *Buford-Clark v. Birmingham Board of Education*, 2015 WL 225464 at *5 (N.D. Ala. 2015); *accord Perkins v. Kushla Water District*, 21 F. Supp. 3d 1250, 1262 (S.D. Ala. 2014); *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1250 (S.D. Fla. 2009); *Little v. Peach County School District*, 2009 WL 198003 at *11 (M.D. Ga. 2009). In *Harbuck v. Teets*, 152 Fed. Appx. 846 (11th Cir. 2005), the plaintiff alleged a number of adverse actions, including that she "has been subject to heightened scrutiny since her deposition in her previous EEOC complaint." *Id.* at 847. The Court, citing *Davis*, ruled that "[t]he actions about which Harbuck complains do not constitute an adverse employment action …." *Id.* at 848. Because the amended complaint does not allege that the plaintiff received any disciplinary action or was subjected to any tangible consequence as a result of the scrutiny of her time or the questioning of her regarding the missing package, it does not allege an adverse employment action and thus does not state a claim of race discrimination based on scrutiny or questioning.

### 3. Evaluation.

"A lower score on [a plaintiff's] performance evaluation, by itself, is not actionable under Title VII unless [the plaintiff] can establish that the lower score led to a more tangible form of adverse action, such as ineligibility for promotional opportunities." *Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir. 2006) (citing *Davis*). Because the amended complaint does not allege that the plaintiff suffered any consequence as a result of her evaluation, it does not allege an adverse employment action and thus does not state a claim of race discrimination based on her evaluation.

**4. Berating and reprimands.**

A Title VII discrimination claim "rarely may be predicated merely on [an] employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment."  *Davis*, 245 F.3d at 1242.[2]  Subsequent Eleventh Circuit cases have essentially transformed "rarely" into "never."  *See, e.g., Barnett v. Athens Regional Medical Center, Inc.*, 550 Fed. Appx. 711, 713 (11th Cir. 2013) ("We have held [in *Davis*] that memoranda of reprimand or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title VII.") (internal quotes omitted); *Wallace v. Georgia Department of Transportation*, 212 Fed. Appx. 799, 801 (11th Cir. 2006) ("Under the standard articulated in *Davis*, [there was no] adverse employment action [because] [t]he written reprimand did not lead to any tangible harm in the form of lost pay or benefits [and] there is no evidence that [the plaintiff] has been denied job promotions as a result of the written reprimand."); *Embry v. Callahan Eye Foundation Hospital*, 147 Fed. Appx. 819, 828-29 (11th Cir. 2005) (plaintiff "failed to cite evidence showing that this reprimand resulted in her suffering any tangible consequences in the form of loss of pay or benefits, and it, thus, was not an 'adverse employment action.'") (citing *Davis*).

Because the amended complaint does not allege that the plaintiff's berating by a physician, or her reprimand for insubordination, had any tangible impact on the terms, conditions or privileges of her employment, it does not allege an adverse employment action and thus does not state a claim of race discrimination

---

[2] What the amended complaint calls "berating" clearly was criticism of the plaintiff's job performance, since it was prompted by a "scheduling conflict, and since 0qshe objects to being called "stupid" even though she was doing the work of two.  (Doc. 18 at 4).

8

based on these criticisms.³ However, because the amended complaint alleges that the plaintiff was told she was being fired due to her reprimand for returning late from the benefits fair, that reprimand constitutes an adverse employment action.

### 5. Other actions.

This leaves for consideration three miscellaneous complaints: that the plaintiff was asked to make a list of her duties; that her EEO complaint became known and the subject of comments and laughter; and that her supervisor accused the plaintiff of creating a hostile work environment. "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." *Davis*, 245 F.3d at 1239 (internal quotes omitted). Thus, being accused of various things does not, without a tangible consequence, amount to an adverse employment action. *Id*. at 1240 (memo accusing plaintiff of ignoring a basic aspect of his job was not an adverse employment action); *Miller-Goodwin v. City of Panama Beach*, 385 Fed. Appx. 966, 970 (11th Cir. 2010) (being accused of causing a scene was not an adverse employment action); *Lamont v. City of Albany*, 2015 WL 93874 at *10 (M.D. Ga. 2015) ("The Court finds that repeated false accusations alone, without accompanying negative employment consequences, are not adverse employment actions."). Similarly, being laughed is not an adverse employment action. *Medearis v. CVS Pharmacy, Inc*., ___ Fed. Appx. ___, 2016 WL 1273475 at *5-6 (11th Cir. 2016). And being asked to make a list of job duties is simply what employees frequently do as part of their jobs. Because the amended complaint does not allege any adverse consequence to the plaintiff's employment flowing from these incidents, it does not allege an adverse employment action in any of these respects.

---

³ The amended complaint alleges that the reprimand for insubordination negatively affected her evaluation but, as discussed in Part I.A., it does not allege any negative effect flowing from the evaluation.

### 6. Summary.

The defendant's motion to dismiss the plaintiff's race discrimination claim is due to be granted except to the extent the plaintiff bases her claim on termination, disparate workload, and/or reprimand for returning late from a benefits fair.

### B. Hostile Work Environment.

As noted, a complaint must address, directly or inferentially, each element of a claim. One element of a hostile work environment claim is that the unwelcome harassment "was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). As this Court has recently noted, "[t]he Eleventh Circuit has, in several unpublished opinions, indicated that, to satisfy *Twombly* and *Iqbal*, a complaint must set forth facts plausibly suggesting that the hostile environment experienced by the plaintiff was sufficiently severe and/or pervasive to satisfy the fourth element." *Grissett v. H.J. Baker Brothers*, 2015 WL 5734452 at *2 (S.D. Ala. 2015). The defendant denies that the amended complaint does so.

"Determining whether the harassment was sufficiently severe or pervasive involves both an objective and a subjective component. … In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotes omitted). "Any relevant factor must be taken into account, but no single factor is dispositive." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (11th Cir. 2012).

The defendant argues that the plaintiff's double workload was not severe or pervasive, (Doc. 27 at 4), but the only case it cites is a trial court opinion that

(construed generously in favor of the defendant) involved a plaintiff required to perform her job while a co-employee was permitted to loaf, not a plaintiff required to perform the work of two employees. Nor does the defendant's authority offer anything beyond a raw conclusion that the claim was inadequately pleaded.

Without addressing any specific underlying conduct, the defendant argues generally that the amended complaint does not plausibly allege that the conduct was frequent, threatening or humiliating or that it interfered with the plaintiff's job performance. (Doc. 18 at 11). But it is hard to see how being required to perform the work of two every day for months could be considered anything other than frequent, and it is equally hard to see how doing so could fail to plausibly suggest a resulting negative impact on job performance. Reasonable contrary arguments may exist, but the Court will not conjure them on its own.

Because the defendant has failed to show that the plaintiff's double workload cannot on its own support her hostile work environment claim, the Court need not address the other incidents on which the plaintiff relies in support of this claim. Based on the plaintiff's double workload, the defendant's motion to dismiss is due to be denied.

### C. Retaliation.

Because a defendant's retaliatory conduct must be caused by a plaintiff's protected activity, only conduct occurring after the plaintiff's opposition to an unlawful employment practice can support a retaliation claim. The plaintiff's first potentially protected activity occurred in September 2014, when she filed an internal EEO complaint. (Doc. 17 at 4).[4] Subsequent conduct directed against the plaintiff, as alleged in the amended complaint (other than her termination) includes: her EEO complaint becoming known and laughed at; being berated by a

---

[4] Although the amended complaint alleges that the plaintiff filed a charge with the EEOC the day before she was fired, (Doc. 17 at 5), the plaintiff's retaliation claim is based only on her internal EEO complaint. (Doc. 26 at 4).

physician; receiving a reprimand for returning late from a benefits fair; and being accused of fostering a hostile work environment.

The defendant does not deny that the plaintiff relies on each of these incidents in support of her retaliation claim. (Doc. 18 at 7).[5] The defendant does suggest that the amended complaint negates a retaliatory motive for the berating and reprimand because it states the background of the berating (a scheduling conflict) and the employer's stated reason for the reprimand (returning late from the benefits fair). (*Id*. at 7 n.2; *id*. at 8-9). Reciting an employer's pretext for its conduct, however, hardly amounts to an admission that no unlawful motive inspired the employer.

Retaliation claims under Title VII no longer require an "adverse employment action" as defined in *Davis* and like cases. "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to ... actions that affect the terms and conditions of employment." *Burlington Northern and Santa Fe Railway v. White*, 548 U.S. 53, 64 (2006). Instead, the test is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (internal quotes omitted). While "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence," *id*. at 68, *Burlington Northern* "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Crawford*, 529 F.3d at 973 n.13. The defendant argues that the amended complaint does not plausibly allege that the berating or reprimand were sufficiently adverse to dissuade a reasonable worker from engaging in protected activity. (Doc. 18 at 8).

---

[5] The defendant overlooks the final listed incident.

In support of its argument, the defendant relies primarily on a lower court opinion that erroneously utilized the "adverse employment action" standard applicable to discrimination cases (and that expressly relied on *Davis*). The only other authority the defendant cites is an unpublished Eleventh Circuit opinion that, while it acknowledged *Burlington Northern* and *Crawford*, mistakenly required the plaintiff to show something like "a decrease in salary," despite *Burlington Northern*'s holding that a materially adverse action for retaliation purposes need not affect the terms and conditions of employment.[6] Because the defendant has neither articulated the correct standard nor relied on cases applying the correct standard, it has failed to demonstrate that the amended complaint fails to state a claim of retaliation.

Without citation to authority, the defendant asserts that laughing at an employee's EEO complaint cannot satisfy *Burlington Northern*, brushing it off as a mere "lack of good manners." (Doc. 18 at 8). But the defendant overlooks that the plaintiff's EEO complaint was laughed about because the complaint was made known to begin with, and the defendant has neither argued nor shown that a reasonable employee would not be dissuaded from making or pursuing an EEO complaint knowing the employer will make it public and invite employees to ridicule it.

The defendant's motion to dismiss by its express terms seeks dismissal of the retaliation claim "based on any alleged adverse actions *other than her termination*." (Doc. 18 at 13 (emphasis added)). Nevertheless, in its reply brief the defendant seeks dismissal as to termination as well, on the grounds that neither the amended complaint nor the plaintiff's opposition brief clearly alleges that the termination was retaliatory. (Doc. 27 at 3). "District courts, including this one,

---

[6] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007). For reasons discussed in text, the Court does not find the defendant's unpublished authority persuasive.

ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining rationale).  The defendant offers, and the Court discerns, no reason not to apply the rule in this case.[7]

## II. Motion for More Definite Statement.

The defendant objects that the amended complaint is an impermissible "shotgun pleading" because each count incorporates all preceding paragraphs and because it is "replete" with facts not obviously connected to any particular cause of action.  As a result, the defendant says it has difficulty perceiving how the plaintiff contends the defendant wronged her.  As a remedy, the defendant asks the Court to order the plaintiff to file a second amended complaint to "identify which facts support which cause of action."  Without this relief, the defendant says it cannot "adequately identify and respond to her claims."  (Doc. 18 at 12-13).

Shotgun pleadings are certainly a bane of modern federal practice, but labels alone do not entitle a defendant to relief under Rule 12(e).  That rule is triggered only when the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  The amended complaint consists of 20 numbered paragraphs, only nine of which address the conduct of which the plaintiff complains.  Even before the instant ruling on the motion to dismiss, the amended complaint was sufficiently short and clear to permit the defendant to prepare an appropriate response.  To the extent that any residual ambiguity remains as to what conduct is challenged under which claims, the defendant can eliminate it through discovery.

---

[7] Similarly, the defendant in its reply for the first time raises a causation argument.  (Doc. 27 at 3 n.1).  The Court declines to entertain this tardy argument.

## CONCLUSION

For the reasons set forth above, the motion to dismiss the plaintiff's race discrimination claim is **granted** to the extent the claim is based on scrutiny of the plaintiff's time, her reprimand for insubordination, her negative evaluation, asking her to create a list of job duties, questioning her regarding a missing package, making her EEO complaint known, discussion and laughing regarding the EEO complaint, berating the plaintiff, or accusing the plaintiff of creating a hostile work environment, and is otherwise **denied**; the motion to dismiss the plaintiff's hostile work environment claim is **denied**; and the motion to dismiss the plaintiff's retaliation claim is **denied**.  The motion for more definite statement is **denied**.

DONE and ORDERED this 3rd day of August, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE